IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|   |   |
|---|---|
| **Brian Piscitelli** <br> 13716 Bridlewood Drive <br> Gainesville, Virginia 20155 <br><br> *Plaintiff*, <br><br> v. <br><br> **GitLab, Incorporated** <br> 268 Bush Street, Suite 350 <br> San Francisco, California 94105 <br><br><br> *Defendant*. <br><br> **Serve Registered Agent:** <br> Corporation Service Company <br> 1900 W Littleton Blvd <br> Littleton, Colorado 80120 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **Civil Action No.:** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **COMPLAINT**

Plaintiff, Brian Piscitelli, (herein "Piscitelli" or "Plaintiff"), by way of undersigned counsel, hereby brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et seq., against Defendant GitLab, Incorporated (herein "GitLab" or "Defendant") for unlawful religious discrimination and retaliation for engaging in protected activity.

### **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under federal law, i.e., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.

2. Venue is appropriate in this Court under 28 U.S.C. 1391(e) because all of the adverse actions giving rise to the Plaintiff's claims occurred in the Eastern District of Virginia.

### **PARTIES**

1

3. Plaintiff, Brian Piscitelli is an individual citizen and resident of Gainesville, Virginia. He is Male and a Christian.

4. Plaintiff, at all times relevant hereto, was an employee of GitLab and worked in Gainesville, Virginia.

5. The Defendant, GitLab, is a company based out of California, that offers its clients a DevSecOps platform for software innovation.

## ADMINISTRATIVE EXHAUSTION

6. Plaintiff Piscitelli timely filed a Charge of Discrimination (EEOC No. 570-2022-02905) with the Equal Employment Opportunity Office alleging that the Defendant discriminated against him due to his religion and retaliated against him for engaging in protected activity.

7. The EEOC issued Plaintiff Piscitelli a Right to File a Civil Action which was received on August 24, 2023.

## STATEMENT OF FACTS

8. Piscitelli began working at GitLab, remotely, in Gainesville, Virginia, on or about October 22, 2019, as a Senior Public Sector Solutions Architect

9. Piscitelli's position required him to have security clearance, which he possessed at the time of hire.

10. Piscitelli's main job duties and responsibilities was to support the sales team who provided technical solutions to the Intelligence Community. As such, Piscitelli demonstrated to prospects and clients how GitLab solutions best addressed client business requirements.

11. Piscitelli's position required him to have a security clearance.

12. During the time of the allegations, Piscitelli's supervisor, was Christopher Maurer, Manager of Solutions Architect, Public Sector and later became the Facilities Security Officer "FSO") during Piscitelli's tenure.

2

13. Piscitelli enjoyed his work and found it rewarding. He displayed exemplary performance and his supervisor Mr. Maurer, often praised him for his work. Mr. Piscitelli received good evaluations, bonuses and attained President's Club.

14. In or around late 2020, Mr. Maurer informed Piscitelli that GitLab would be implementing a vaccine mandate for the COVID-19 virus (herein "COVID), when it became available.

15. In or around January 2021, the COVID vaccine became available and GitLab required all employees to receive the vaccination.

16. In March 2021, Piscitelli inquired about a religious exemption from Mr. Maurer.

17. Mr. Maurer referred Piscitelli to Human Resources and informed him that if he did not get the COVID-19 vaccine that GitLab might look upon him in a different light compared to his vaccinated colleagues and that GitLab might have to look at other options, clearly implying termination.

18. In or around November 2021, Piscitelli contacted Patti Egan, Vice President of Total Rewards and People Operations (Human Resources) and inquired about a religious/medical exemption/accommodation.

19. In or around early December 2021, Ms. Egan sent Piscitelli forms to complete to obtain a religious/medical exemption/accommodation to the COVID vaccine mandate.

20. On or about December 16, 2021, Piscitelli made a request that GitLab change the travel policy to allow unvaccinated employees to travel. Ms. Egan was aware of his request and CEO Sid Sijbrandij, Chief Executive Officer, received notification of it.

21. In or around late December 2021, Piscitelli contacted Michael McBride, Chief Revenue Officer, via Slack and notified him that he (Piscitelli) had not received the COVID-19 vaccine nor had he been approved for a medical or religious accommodation, and asked whether he could

attend President's Club, which entailed he and his wife traveling for a one (1) week vacation destination, all expenses paid for by GitLab due to exemplary performance. Mr. McBride told Piscitelli to speak with his administrative assistant, who told him that he could not attend since he was not vaccinated. Piscitelli asked whether a medical or religious exemption would be considered and was told that it would not.

22. In January 2022, GitLab rescinded its COVID-19 vaccine mandate and no longer accepted requests for religious/medical exemption/accommodation. Accordingly, due to the rescission, Piscitelli could not submit a request for a religious exemption/accommodation.

23. In or around February 2022, GitLab reminded their employees that although travel restrictions were being eased throughout the U.S., its policy that travel required either a vaccination or an accommodation/exemption, was still in effect.

24. Beginning in or around March 2022, Mr. Maurer began to repeatedly ask Piscitelli his vaccination status at weekly Zoom meetings.

25. On or about April 25-27, 2022, GEOINT hosted a trade show in Aurora, Colorado. Piscitelli should have attended however when he asked Mr. Maurer whether he could attend he was told he could not.

26. In or around early May 2022, Maurer informed Piscitelli that he needed to have the COVID-19 vaccine to support his customers and later directed him to contact all his customers and inquire as to their vaccination requirements. It was very clear from Mr. Maurer's actions that Piscitelli's refusal to become vaccinated and his requests to seek a religious waiver frustrated and angered him (Maurer). Indeed, Mr. Maurer often became visibly agitated with Piscitelli's vaccine refusal and waiver request and he made fun of the employees who were not vaccinated. Mr. Maurer also often brought up the need for vaccinations during peer conversations to Piscitelli's team, knowing full well of Mr. Piscitelli's position on the matter.

4

27. Piscitelli contacted all his customers and none required the Covid-19 vaccination.

28. Or about June 16, 2022, Piscitelli prepared to attend an onsite meeting at Booz Allen in Chantilly, Virginia. Prior to the meeting, Piscitelli coordinated with Marc Kriz, Sales Representative at GitLab who communicated with the customer contact at Booz Allen, Mr. Visco, to verify that vaccinations were not required for entrance. Mr. Visco confirmed that vaccinations were not required. However, upon arrival, Piscitelli was turned away due to lack of COVID-19 vaccine or negative test.

29. In or around June 28, 2022, Piscitelli again asked Ms. Egan if religious/medical exemption/accommodation waivers were accepted. Ms. Egan reiterated GitLab's policy since January 2022 and told Piscitelli that waivers were no longer accepted. In addition, Ms. Egan also said that GitLab's company policy for travel required a COVID-19 vaccination.

30. Piscitelli traveled for work. Specifically, he would visit client sites, attend customer offsite events and trade shows. The ability to travel was essential to his position. Thus, eliminating Piscitelli's ability to travel for work because he did not have the COVID-19 vaccine nor could he submit a waiver, was clearly discriminatory.

31. GitLab's refusal to accept waivers for the COVID-19 vaccination prevented Piscitelli from traveling but allowed his colleagues, who did not require a waiver, to travel sans impunity.

32. On or about July 26, 2022, Mr. Maurer informed Piscitelli that his position required him to maintain a security clearance.

33. In or around August 2022, Mr. Maurer informed Piscitelli that his security clearance had lapsed in mid 2022, which was inaccurate.

34. It was Mr. Maurer's duty as an FSO to monitor and track the status of all employees' security clearances and thus, he would have known when Piscitelli's clearance was due to lapse, yet he did not inform him. This was done in retaliation for requesting a religious

5

accommodation/exemption to the COVID-19 vaccine.

35. A contractor is responsible for sponsoring and submitting security clearance requests for contractor employees who require access to classified information. An individual cannot request his or her own security clearance. Thus, GitLab should have submitted a request to renew Piscitelli's security clearance and, in the interim while waiting for the renewal, GitLab should have requested temporary access pending adjudication.

36. GitLab has applied for other employees, who had not requested a religious accommodation for the COVID-19 vaccine, to be granted access to sensitive information after their clearance lapsed but did not do the same for Piscitelli.

37. On or about August 3, 2022, GitLab terminated Piscitelli and used lack of security clearance as a flimsy excuse to veil its discriminatory and retaliatory actions.

38. Simply put, there were different rules, standards and opportunities for employees who received the vaccine and who did not seek religious exemptions/waivers and clearly, they were treated more favorably.

39. Shortly thereafter, GitLab placed Kevin Chasse in Piscitelli's former position. Mr. Chasse was vaccinated for the COVID-19 virus. GitLab gave Mr. Chasse an avenue to hold his security clearance and was given time for his clearance check to be conducted while he was not cleared.

40. Clearly, Mr. Chasse was treated more favorably than Piscitelli.

41. As a result of the termination, Plaintiff Piscitelli suffered extreme stress, depression, harm to his professional reputation, humiliation and anxiety.

42. Plaintiff Piscitelli suffered from extreme stress and anxiety, weight gain, sleeplessness and gastrointestinal issues (which have led to other, severe, medical issues) due to the discrimination and retaliation.

**COUNT I**
**Discrimination Based on Religion in Violation of Title VII of The Civil Rights Act of 1964**

43. Plaintiff incorporates paragraphs 1 to 42 as if fully set forth herein.

44. Through the conduct described above, Plaintiff suffered an adverse employment action when Defendant terminated him.

45. Defendant acted with discriminatory motive and treated Plaintiff less favorably than others. Plaintiff performed his job satisfactorily, as evidenced by his supervisor. Similarly situated employees, who did not require a religious exemption, were treated more favorably.

46. As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

47. In addition, as a consequence of the Defendant's actions, the Defendant is liable to Plaintiff for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

48. Through the conduct of the Defendant and its agents and/or representatives Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Plaintiff's rights.

## COUNT II
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

49. Plaintiff re-alleges Paragraphs 1-48 and incorporates them fully herein.

50. Plaintiff additionally alleges that the Defendant and/or agents or employees acting on its behalf, subjected him to adverse and disparate treatment in retaliation for his opposition to the Defendant's unlawful employment practices and its participation in protected activity in violation

of Title VII, 42 U.S.C. § 2000e-3(a).

51. The Defendant's act of reprisal against Plaintiff, included harassment and ultimately termination.

52. Plaintiff's direct supervisor is responsible for the aforementioned actions in Paragraph No. 34 and had knowledge of Plaintiff's requests for religious exemption/accommodation.

53. As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff has suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

54. In addition, as a consequence of the Defendant's actions, the Defendant is liable to Plaintiff for damages as well as for attorney's fees, the costs of this litigation, and accrued interest.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Enter judgment for Plaintiff against Defendant on all Count(s).

B. Declare that the conduct of Defendant is in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1);

C. Award Plaintiff equitable relief, such as back pay, compensation for security clearance reinstatement and other economic losses and entitlements retroactive to the date of the unlawful action found to have occurred in this case;

D. Award Plaintiff compensatory and punitive damages for the injuries and losses that he suffered in an amount to be proved at trial;

E. Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses

incurred by Plaintiff as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest; and

F. Order such other equitable and legal relief as the Court deems necessary and appropriate.

## **JURY DEMAND**

Plaintiff requests a trial by a jury of their peers as to all claims set forth in this Complaint.

Dated: November 21, 2023

Respectfully submitted,

Rosanna Lopez, Esquire
Virginia State Bar No. 70547
Lopez & Wu, PLLC
1818 Library Street, Suite 500
Reston, Virginia 20190
Phone: 703-835-6145
Facsimile: 703-831-0181
Email: rlopez@lopezandwu.com

Attorney for Brian Piscitelli